UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| YVETTE MCQUEEN and DEBORAH A. GLOVER, on behalf of themselves and those similarly situated, *Plaintiffs*, v. CREDIT ONE BANK, N.A.; and JOHN DOES 1 to 10, *Defendants*. | 23-cv-01601 (MEF)(SDA) <u>**OPINION and ORDER**</u> |

\*     \*     \*

For the purposes of this brief Opinion and Order, the Court largely assumes familiarity with the facts and procedural history of this case, including the Court's prior opinion at <u>McQueen</u> v. <u>Credit One Bank, N.A.</u>, 769 F. Supp. 3d 321 (D.N.J. 2025).

\*     \*     \*

Some background.

A bank[1] sent over a request to a credit-reporting agency[2] --- for information about people who might meet the bank's criteria for "pre-approved" credit cards.[3]

---

[1]  Credit One Bank, N.A.

[2]  Experian.

[3]  <u>See</u>, <u>e.g.</u>, Exhibit 2-1 to Defendant Credit One Bank, N.A.'s Declaration in Support of its Motion for Summary Judgment ("Example Credit Offer")(ECF 104-5) at 4-5; <u>see</u> Defendant Credit One Bank, N.A.'s Statement of Material Facts Not in Dispute in Support of its Renewed Motion for Summary Judgment ("Defendant's SOMF") (ECF 104-2) ¶¶ 1-2; Plaintiff's Response to Defendant's Statement of Undisputed Facts and Supplemental Statement of

The bank got the reports, and then mailed credit card offers to two people.[4]  See Defendant's SOMF ¶¶ 11, 16; Plaintiffs' Response to Defendant's SOMF ¶¶ 11, 16; Example Credit Offer at 4-5.

Those two people ("the Plaintiffs") then sued the bank ("the Defendant").  They claimed violations of the Fair Credit Reporting Act.[5]  The Act generally bars entities like the Defendant from "obtain[ing] a consumer report."  15 U.S.C. § 1681b(f); see also 15 U.S.C. § 1681a(b).

\*       \*       \*

The Defendant has now moved for summary judgment.

It is not liable under the Fair Credit Reporting Act, it argues. Consumer reports can be lawfully obtained for the purposes specified in the Act --- and here, the Defendant contends, it had one of those purposes.  See Credit One Bank, N.A.'s Brief in Support of its Renewed Motion for Summary Judgment ("Defendant's Brief") (ECF 104-1) at 1.

Namely, the Defendant contends that it got the credit reports because it wanted to make "firm offers of credit."  Defendant's Brief at 11-12 (citing 15 U.S.C. § 1681b(c)(1)(B)(i)).

If the Defendant did make such offers, then its request for information from the credit-reporting agency was allowed under the Act --- and the Defendant is entitled to summary judgment. Cf. 15 U.S.C. § 1681b(f).

If the Defendant did not make such offers, then its request for information may not have been lawful --- and the Defendant is not entitled to summary judgment.  See id.

––––––––––––––––––––––

Facts ("Plaintiffs' Response to Defendant's SOMF") (ECF 110-2) ¶¶ 1-2.

[4]  Yvette McQueen and Deborah A. Glover.

[5]  See First Amended Class Action Complaint and Jury Demand ("Complaint") (ECF 10) ¶¶ 55-67 (alleging that the Defendant "knowingly and willfully" violated the Fair Credit Reporting Act contra 15 U.S.C. § 1681n); id. ¶¶ 68-77 (alleging in the alternative that the Defendant "negligently" violated the Act contra 15 U.S.C. § 1681o).

Does the evidence show the Defendant made "firm offer[s] of credit," 15 U.S.C. § 1681a(l), under the Fair Credit Reporting Act?  Take that up just below.

*       *       *

Under the Act, a "firm offer of credit" is "any offer of credit . . . to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer."  Id.

This means that when a "firm offer" is made, "the creditor becomes obligated to actually extend the offered-up credit --- contingent only on the creditor verifying that the recipient of the offer meets the screening criteria the creditor used to make the offer in the first place."  McQueen, 769 F. Supp. 3d at 328.[6]

The Defendant argues that it met this standard here.  Its "front-end criteria," id. --- the specs it sent to the credit-reporting agency --- "matche[d] the back-end" criteria used to "verify[] that the recipient of the offer me[t] the screening criteria."  Id.; see Defendant's Brief at 15-17.

The Plaintiffs see it the other way.  Lay the front-end criteria on top of the back-end criteria, and, they argue, there is not required overlap between them.  See Plaintiffs' Brief in Opposition to Defendant Credit One Bank, N.A.'s Renewed Motion for Summary Judgment ("Plaintiffs' Brief") (ECF 110) at 9-13.  The front-end/back-end "match[]" required by the Act is missing.

*       *       *

Out of the gate, the Plaintiffs seem to have the better of this back and forth.[7]

---

[6]  The Fair Credit Reporting Act also contemplates three situations in which the relevant offer "may be further conditioned."  15 U.S.C. § 1681a(l).  But the parties agree that none of these is relevant here.  See Plaintiffs' Brief at 10-11; Defendant Credit One Bank, N.A.'s Response to Plaintiffs' Supplemental Statement of Facts in Response to Credit One's Renewed Motion for Summary Judgment (ECF 111-1) ¶ 17.

[7]  Especially because, at this stage, the Court must construe the facts in the light most favorable to them.  See, e.g., Angino v. Trans Union LLC, 784 F. App'x 67, 68 (3d Cir. 2019).

3

On the front end, the Defendant apparently told the credit-reporting agency to send over reports on people "with addresses in the 50 states and Washington, D.C."  Defendant's Brief at 24.[8]

But on the back end, the Defendant asked whether people were "resident[s] of a U.S. Territory"[9] or "have an APO/FPO address."[10]  See, e.g., Example Credit Offer at 6 (listing these as "eligibility criteria," and noting that consumers "may not qualify for this offer" if they are residents of a U.S. Territory or have an APO/FPO address); see also Defendant's Brief at 15-17.

Given all this, it would seem that some people might be able to meet the front-end standard, but still not be entitled to a credit card --- because they can be excluded on the back end.

Think of a Lieutenant Jane Doe.  For most of the year, she lives in the barracks at Guantanamo Bay and uses an FPO address.  See footnote 10.  But say she keeps a small condo in New Jersey, for vacation trips to the beach and quick visits back home to see family.

For Lieutenant Jane Doe, there would seem to be a mismatch. Under the front-end criteria, she is eligible for a credit card

---

[8]  The quote from the Defendant's brief is a sensible-enough shorthand for what the evidence shows the front-end criteria to have been.  See Defendant's SOMF ¶ 7 (indicating that inclusion criteria included "All 50 states and Washington, D.C.," plus requirements that "[a]ddress[es] must either be 'NORMAL DELIVERY' or 'P.O. BOX' or 'RURAL ROUTE'" and that "'TELEMARKET ONLY NON-DELIVERABLE ADDRESS[ES]'" must be "exclude[d]"); Plaintiffs' SOMF ¶ 7; see also Exhibit 1 to Defendant Credit One Bank, N.A.'s Declaration in Support of its Motion for Summary Judgment (ECF 104-4).

[9]  United States territories include, among others, Puerto Rico, the U.S. Virgin Islands, Guam, American Samoa, and the Northern Mariana Islands.

[10]  "APO" (Army Post Office) and "FPO" (Fleet Post Office) are designations used to send mail to United States military personnel.  To mail a care package to Lieutenant Jane Doe, stationed at Guantanamo Bay Naval Base, the address label does not mention Cuba.  Rather, it goes like this:

        Lieutenant Jane Doe
        Unit [number] Box [number]
        FPO AE 09593

--- because she has an address within the 50 states, in New Jersey.  But on the back end, it appears that she cannot actually get a card.  After all, the back-end criteria suggests that individuals with FPO addresses are not eligible.  And she has such an address.

Same basic point for a man who has two houses.  Maybe an apartment in Miami, and also one in Puerto Rico where he spends most of his time.  He would seem to check the box on the front end because he has a Florida address.  But it seems he would miss the cut on the back end --- because of his Puerto Rico residency.

These seem to be straightforward mismatches.  The Defendant has not meaningfully taken them on.  And because it has not, it would appear that the Court cannot conclude that the Defendant is entitled to judgment as a matter of law, as Rule 56 requires of any successful summary judgment motion.  See Fed. R. Civ. P. 56(a).

But there is a possible wrinkle.

The mismatches identified above[11] are ones that would seem to have little to do with the Plaintiffs.  There is no suggestion in the record that either Plaintiff has, say, an FPO address or two houses.  Can the Plaintiffs invoke --- and do they have Article III standing to invoke --- a mismatch that, in a sense, does not apply to them?

If yes, then the Defendant's motion must be denied for now, for the reasons set out above.

But if no, then things may come out differently.[12]

All of this must be addressed before the Defendant's motion at ECF 104 can be definitively resolved.  An order as to next steps will issue later today.

*     *     *

IT IS on this 15th day of July, 2026, **SO ORDERED.**

_____
Michael E. Farbiarz, U.S.D.J.

_____

[11]  There may be others.

[12]  Assuming any non-Article III issues have not been waived or abandoned by the Defendant.